```
                    UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF WEST VIRGINIA
                            AT CHARLESTON
```

**UNITED STATES OF AMERICA** and
**STATE OF WEST VIRGINIA,**
by and through the
**WEST VIRGINIA DEPARTMENT OF**
**ENVIRONMENTAL PROTECTION,**

    Plaintiffs

v.                                                           Civil Action No. 2:09-0099

**PATRIOT COAL CORP** and
**MAGNUM COAL CO.** and
**APOGEE COAL CO., LLC** and
**CATENARY COAL CO. LLC** and
**COYOTE COAL CO. LLC** and
**DAKOTA LLC** and
**HOBET MINING, LLC** and
**JUPITER HOLDINGS LLC** and
**LITTLE CREEK LLC** and
**MIDLAND TRAIL ENERGY LLC** and
**PANTHER LLC** and
**REMINGTON LLC** and
**WILDCAT, LLC** and
**BLACK STALLION COAL CO., LLC** and
**BLACK WALNUT COAL CO.** and
**COLONY BAY COAL CO.** and
**EASTERN ASSOCIATED COAL, LLC** and
**HILLSIDE MINING CO.** and
**JARRELL'S BRANCH COAL CO.** and
**KANAWHA EAGLE COAL, LLC** and
**LOGAN FORK COAL CO.** and
**MARTINKA COAL CO., LLC** and
**MOUNTAIN VIEW COAL CO., LLC** and
**PINE RIDGE COAL CO., LLC** and
**RIVERS EDGE MINING, INC.** and
**WINIFREDE DOCK LLC,**

    Defendants

## MEMORANDUM OPINION AND ORDER

Pending is the unopposed motion of the United States to enter the consent decree previously lodged in this case, filed March 26, 2009.

I.

On February 5, 2009, the United States, on behalf of the Administrator of the Environmental Protection Agency ("EPA"), and the State of West Virginia, by and through the West Virginia Department of Environmental Protection ("DEP"), instituted this action. (Compl. ¶ 1). Plaintiffs' claims, filed pursuant to sections 309(b) and (d) (33 U.S.C. §§ 1319(b) and (d)) of the Federal Water Pollution Control Act ("CWA" or the "Act") and Section 22 of the West Virginia Water Pollution Control Act ("WPCA"), West Virginia Code § 22-11-22, allege that defendants have discharged pollutants into the waters of the United States and West Virginia, and continue to do so. (Id.) The discharges are additionally asserted to violate the conditions and limitations of the National Pollutant Discharge Elimination System ("NPDES") permits issued to defendants by West Virginia. (Id.) Plaintiffs sought substantial civil penalties against some

2

of the defendants and a permanent injunction to halt the alleged illegal discharges. (<u>Id.</u> ¶ 2).

Contemporaneous with the institution of this action, plaintiffs lodged a proposed consent decree pursuant to 28 C.F.R. § 50.7 (2008). Section 50.7(a) and (b) provide pertinently as follows:

> (a) It is hereby established as the policy of the Department of Justice to consent to a proposed judgment in an action to enjoin discharges of pollutants into the environment only after . . . an opportunity is afforded persons . . . who are not . . . parties . . . to comment on the proposed judgment prior to its entry . . . .
>
> (b) . . . [E]ach proposed judgment . . . shall be lodged with the court . . . at least 30 days before the judgment is entered . . . . Prior to entry of the judgment, or some earlier specified date, the Department of Justice will receive and consider, and file with the court, any written comments, views or allegations relating to the proposed judgment. . . .

28 C.F.R. § 50.7(a) and (b) (2009).

On February 11, 2009, consistent with the foregoing regulation, the Department of Justice published a notice in the <u>Federal Register</u>. The notice provided, <u>inter</u> <u>alia</u>, as follows:

> Notice is hereby given that on February 5, 2009, a proposed consent decree in <u>United States v. Patriot Coal Corp. et al.</u>, Civil Action No. 2:09-cv-0099, was lodged with the United States District Court for the Southern District of West Virginia.
>
> The proposed Consent Decree will resolve claims alleged in this action by the United States and the State of

3

>West Virginia against Patriot Coal Corporation et al. for the discharge of pollutants into waters of the United States in violation of Section 301 of the Act, 33 U.S.C. 1311, and in violation of the conditions and limitations of National Pollutant Discharge Elimination System ("NPDES") permits issued by the State pursuant to Section 402 of the Act, 33 U.S.C. 1342, and W. Va. Code 22-11-8. Under the proposed Consent Decree, Defendants will perform injunctive relief including: Hiring a third-party consultant to develop and implement a company-wide compliance-focused environmental management system, creating a database to track information relevant to compliance efforts, conducting regular internal and third-party environmental compliance audits, implementing a system of tiered response actions for any potential future violations, conducting annual training for all employees and contractors with environmental responsibilities and/or responsibilities under the consent decree, and implementing stream restoration projects. In addition, Patriot will pay a civil penalty of $6.5 million.
>
>The Department of Justice will accept comments relating to the proposed consent decree for a period of thirty (30) days from the date of publication of this notice. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division, and mailed either electronically to [pubcomment-ees.enrd@usdoj.gov](mailto:pubcomment-ees.enrd@usdoj.gov) or in hard copy to P.O. Box 7611, U.S. Department of Justice, Washington, DC 20044-7611. Comments should refer to United States v. Patriot Coal Corp. et al., Civil No. 2:09-cv-0099 (S.D. W.Va.) and D.J. Reference No. 90-5-1-1-09476.
>
>Robert Brook,
>Assistant Chief, Environmental Enforcement Section, Environment and Natural Resources Division.

**Notice, 74 Fed. Reg. 6920-02 (Feb. 11, 2009).**

On March 31, 2009, an order and notice was entered providing that the court would await the expiration of the 14-day

response, and 3-day mailing, periods prior to addressing plaintiffs' motion to enter the proposed consent decree. The 14-day and 3-day periods elapsed on April 12, 2009. No comments or responses were received by the plaintiffs or the court respecting the proposed consent decree.

## II.

A. Jurisdiction

Irrespective of the parties' proposed amicable resolution of this action, it is incumbent upon the court to assure itself of subject matter jurisdiction. See, e.g., Bragg v. West Virginia Coal Ass'n, 248 F.3d 275, 299 (4th Cir. 2001) (noting a "district court's power to enter . . . [a consent] decree depend[s] on its having subject matter jurisdiction over the case.").

Title 33 U.S.C. § 1319(b) provides pertinently as follows:

> The Administrator is authorized to commence a civil action for appropriate relief, including a permanent or temporary injunction, for any violation for which he is authorized to issue a compliance order under subsection (a) of this section. Any action under this subsection may be brought in the district court of the United

5

>     States for the district in which the defendant is
>     located or resides or is doing business, and such court
>     shall have jurisdiction to restrain such violation and
>     to require compliance. . . .

33 U.S.C. § 1319(b).

The Administrator is authorized by section 1319(a) to issue a compliance order when he finds "that any person is in violation of any condition or limitation which implements section 1311 . . . of . . . title [33] in a permit issued by a State under an approved permit program under section 1342 or 1344 . . . ." Id. § 1319(a). The complaint alleges that "[d]efendants' unpermitted discharges and discharges of pollutants in excess of effluent limitations contained in their applicable NPDES permits constitute violations of Section 301 of the CWA, 33 U.S.C. § 1311, and/or Section 402 of the CWA, 33 U.S.C. § 1342."

In its memorandum of law supporting the motion to enter the consent decree, plaintiffs comment briefly upon the nature of the alleged violations and the parties' attempts to reach a negotiated resolution:

>     The Defendants in this action consist of two parent
>     coal companies, Patriot Coal Corporation and Magnum
>     Coal Company, and a total of 24 operating subsidiaries
>     in West Virginia. In July of 2008, Patriot Coal
>     Corporation acquired Magnum Coal Company in its
>     entirety. As a result of the acquisition, Patriot as a
>     whole became the third largest coal company in the
>     Eastern United States and the seventh largest coal

6

producer in the nation, with 13 mining complexes in West Virginia.

. . . .

Prior to Patriot Coal Corporation's acquisition of Magnum Coal Company, the United States and the State of West Virginia initiated separate enforcement proceedings against Magnum and Patriot, respectively. Several months of information gathering and negotiations in the separate state and federal enforcement proceedings followed. Upon Patriot's subsequent acquisition of Magnum, settlement negotiations on injunctive relief for Patriot and Magnum were merged to allow for a consistent approach across the company as a whole; however, in light of preexisting negotiations between Patriot and the State regarding penalty, settlement of penalty against Patriot and its direct subsidiaries remained on the state administrative track.

On February 5, 2009, after several additional months of information gathering and negotiations -- including discussions with the citizen's group Appalachian Center for the Economy and the Environment -- the parties reached final agreement on a settlement and the United States and the State of West Virginia simultaneously filed a Complaint and a Notice of Lodging of Consent Decree with the Court. The Complaint alleged claims against Patriot Coal Corp., <u>et al.</u> for illegal discharges into the waters of the State and waters of the United States in violation of Section 301 of the CWA, 33 U.S.C. § 1311, and Section 8 of the WPCA, W. Va. Code § 22-11-8, and for violating the terms of NPDES permits in violation of Section 402 of the CWA, 33 U.S.C. § 1342, and Section 8 of the WPCA, W.Va. Code § 22-11-8. Specifically, the Complaint alleged that between January 2003 and December 2007, Magnum and its direct subsidiaries violated the terms of their NPDES permits at least 1465 times, Compl. ¶¶ 56-57, and received at least 37 Notices of Violations issued by State inspectors, Compl. ¶ 60. In addition, the Complaint alleges that between July 2006 and March 2008, Patriot and its direct subsidiaries violated the terms of their NPDES permits at least 206 times. Compl.

7

> ¶ 63. The Complaint sought injunctive relief against all Defendants, and civil penalties against Magnum and its direct subsidiaries. Pursuant to the preexisting state enforcement proceeding, civil penalties against Patriot and its direct subsidiaries were assessed in a separate state administrative action.

(Pls.' Memo. in Supp. at 2, 3-4). Additionally, while not determinative, the consent decree recites the parties' belief that the court is statutorily empowered to proceed with this action. (<u>See</u> Prop. Consent Dec. Art. II, § 1).

Based upon the foregoing, the court concludes that it is vested with subject matter jurisdiction pursuant to section 1319(b) and 28 U.S.C. §§ 1331, 1345, and 1355(a), and 1367.[1]

---

[1] Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Section 1345 provides pertinently that "the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." 28 U.S.C. § 1345. Section 1355(a) provides materially as follows: "The district courts shall have original jurisdiction . . . of any action . . . for the recovery . . . of any fine, penalty, or forfeiture . . . incurred under any Act of Congress . . . ." 28 U.S.C. § 1355(a). Section 1367 is the supplemental jurisdiction statute.

B.   Entry of the Proposed Consent Decree

1.   Governing Standards

The United States Court of Appeals for the Fourth Circuit has observed that "a consent decree 'has elements of both judgment and contract,' and is subject to 'judicial approval and oversight' generally not present in other private settlements." Szaller v. American Nat. Red Cross, 293 F.3d 148, 152 (4th Cir. 2002) (quoting Smyth v. Rivero, 282 F.3d 268, 279-80 (4th Cir. 2002)); see also Local No. 93, Int'l Assn. of Firefighters, AFL-CIO v. Cleveland, 478 U.S. 501, 519 (1986); United States v. ITT Continental Baking Co., 420 U.S. 223, 237 n.10 (1975) (citation omitted); Alexander v. Britt, 89 F.3d 194, 199 (4th Cir. 1996).

Our court of appeals expanded upon this principle in Smyth, observing that a court is expected, when presented with a proposed consent decree, to scrutinize the agreed resolution and make certain findings prior to entry:

> Because it is entered as an order of the court, the terms of a consent decree must also be examined by the court.  As Judge Rubin noted in United States v. Miami,
>
>> Because the consent decree does not merely validate a compromise but, by virtue of its

9

> injunctive provisions, reaches into the
> future and has continuing effect, its terms
> require more careful scrutiny. Even when it
> affects only the parties, the court should. .
> . examine it carefully to ascertain not only
> that it is a fair settlement but also that it
> does not put the court's sanction on and
> power behind a decree that violates
> Constitution, statute, or jurisprudence.
>
> 664 F.2d at 441 (Rubin, J., concurring). In other
> words, a court entering a consent decree must examine
> its terms to ensure they are fair and not unlawful.

Smyth, 282 F.3d at 280.

The standards governing consideration of a proposed consent decree are elucidated further by United States v. North Carolina, 180 F.3d 574, 581 (4th Cir. 1999):

> In considering whether to enter a proposed consent
> decree, a district court should [1] be guided by the
> general principle that settlements are encouraged.
> Nevertheless, a district court should not blindly
> accept the terms of a proposed settlement. See Flinn v.
> FMC Corp., 528 F.2d 1169, 1173 (4th Cir.1975). Rather,
> before entering a consent decree the court must satisfy
> itself that [2] the agreement "is fair, adequate, and
> reasonable" and [3] "is not illegal, a product of
> collusion, or against the public interest." United
> States v. Colorado, 937 F.2d 505, 509 (10th Cir. 1991).
> In considering the fairness and adequacy of a proposed
> settlement, the court <u>must assess the strength of the
> plaintiff's case</u>. See Flinn, 528 F.2d at 1172-73. While
> this assessment does not require the court to conduct
> "a trial or a rehearsal of the trial," <u>the court must
> take the necessary steps to ensure that it is able to
> reach "an informed, just and reasoned decision</u>." Id.
> (internal quotation marks omitted). In particular, the
> "court should consider <u>the extent of discovery that has
> taken place, the stage of the proceedings, the want of
> collusion in the settlement and the experience of</u>

> **plaintiffs' counsel who negotiated the settlement."** <u>Carson v. American Brands, Inc.</u>, 606 F.2d 420, 430 (4th Cir. 1979) (en banc) (Winter, Circuit Judge, dissenting), adopted by <u>Carson v. American Brands, Inc.</u>, 654 F.2d 300, 301 (4th Cir. 1981) (en banc)(per curiam).

<u>Id.</u> at 581 (emphasis supplied).

## 2. Analysis

As noted in <u>North Carolina</u>, the court accepts the general proposition that settlements are encouraged. The consideration is especially <u>apropos</u> in this action which, had it played out in full adversarial mode, could have consumed a significant amount of time and resources from the parties, and hence the taxpayers, along with a substantial redirection of judicial resources.

The next consideration concerns the fairness, adequacy, and reasonableness of the accord. No one has challenged the following contention offered by plaintiffs:

> The Decree is the product of several months of arms-length, intensive negotiations between and among EPA, the . . . [DEP], and Defendants, each of whom was represented by qualified counsel. Negotiations were based on information provided by Defendants in response to EPA's information request under Section 308 of the Act, information provided by []DEP, input from experienced scientists within EPA and []DEP, input from expert consultants hired by the United States, and

visits to facilities owned and operated by Defendants. (Pls.' Memo. in Supp. at 9). Plaintiffs thus appear to have had a volume of noncompliance information at their disposal without the benefit of the discovery process. Based upon their review of that information, plaintiffs seem to have developed, without the need for extensive litigation, a substantial case to support the relief requested in the complaint. This conclusion is supported, as discussed more fully within, by the significant forms of relief voluntarily agreed to by defendants.

There are other guarantees of sorts concerning the beneficial and significant outcome achieved by plaintiffs. Foremost, is that the views of a leading regional environmental advocate, the Appalachian Center for the Economy and the Environment ("ACEE"), were invited by the regulators. The ACEE has neither commented on nor objected to the proposed consent decree. Also, from the standpoint of plaintiffs' experience, the accord was negotiated by the Department of Justice on behalf of the EPA and the DEP. The EPA and DEP are governmental agencies that employ individuals specially trained and familiar with the relevant scientific disciplines and governing law. The decision to avoid what might well have been a costly and time-consuming diversion of limited agency resources appears to have been a reasonable one under the circumstances.

Another important consideration relating to the fairness, adequacy, and reasonableness of the settlement is the quantity and content of the comments received in response to it. Despite the fact that the filing of this action and the proposed consent decree received media attention, neither the United States nor the court has received any objection to the proposed terms.

Regarding the relief achieved, plaintiffs note that the proposed consent decree includes injunctive measures similar to those approved by the court in United States v. Massey Energy Co., 2:07-cv-0299 (S.D. W. Va. Apr. 9, 2008). First, defendants must develop and implement an Environmental Management System ("EMS") and EMS Manual to assure compliance. The EMS and EMS Manual must include processes and procedures for items such as (1) accounting and responsibility, (2) assessment, prevention, and control of environmental hazards, (3) environmental training, awareness, and competence, (4) pollution prevention, and (5) community outreach. The EPA must approve the EMS Manual and defendants are obliged to employ an EMS auditor within one year after the EMS Manual is implemented.

Second, a series of audits and inspections will be conducted to ensure environmental compliance. Defendants are

charged with conducting an Initial Treatment Systems Audit to determine whether their current treatment systems are adequate. Further, a quarterly Internal Environmental Audit must be conducted on all active and inactive mines to address general environmental compliance issues. Finally, an annual Internal Environmental Audit must occur at all reclaimed sites.

As specified in the proposed consent decree, other audit obligations are imposed as well. Perhaps of greatest moment is the fact that defendants must conduct annual Third-Party Environmental Audits at each facility and report the results of all audits to the Audits Database, which will include a description of any noncompliance or other areas of concern, the planned responses thereto, the responsible individuals for remediation, and a deadline for the response action. Failure to meet the deadlines imposed must be reported quarterly to Patriot and Magnum management, along with the EPA and the DEP.

Third, defendants are required to implement an Electronic Data Tracking and Notification system. As plaintiffs note, defendants' violations stem in part from their failure to systematically track pollutant discharge information. The proposed consent decree requires defendants to implement an electronic notification system within 48 hours of all sampling

results and to create an electronic database for tracking purposes.  The information will find its way into quarterly reports submitted to Patriot and Magnum management, along with the EPA and the DEP.

Fourth, should the foregoing steps fail to obviate discharge violations, defendants must implement a tiered response plan, which includes daily sampling and treatment, consulting with an in-house party experienced in CWA compliance, and, ultimately, retaining a third-party consultant if the violations persist.

Finally, in addition to other[2] beneficial injunctive relief, Magnum and its subsidiaries will pay a $6.5 million civil penalty, one of the largest such penalties to have ever been imposed.  The amount was arrived at after consideration of the penalty factors found in section 309(d) of the CWA.  The proposed consent decree also contains escalating stipulated penalties for

---

[2]Defendants must conduct, twice a year, whole-effluent toxicity testing at ten different outlets and, on an annual basis, perform a "macroinvertebrate rapid bioassessment protocol habitat assessment" to assist EPA as it studies the impacts of coal mining on aquatic life.  (U.S.' Memo. in Supp. to Ent. Consent Dec. at 7).  Further, defendants must implement five stream restoration projects within a watershed where they have previously discharged pollutants.

any future discharges exceeding NPDES permit limits or violations of the proposed consent decree.[3]

In sum, plaintiffs have achieved a significant outcome without the expense, delay, and diversion of resources that might have occurred during protracted litigation. The court, accordingly, finds that the proposed consent decree is fair, adequate, and reasonable. The court further finds the accord is neither illegal nor the product of collusion and that it serves the public interest. In view of these findings, and inasmuch as no person has opposed entry of the consent decree, the court ORDERS as follows:

1. That the unopposed motion of the United States to enter the proposed consent decree be, and it hereby is, granted;

2. That the proposed consent decree be, and it hereby is, entered with the court's approval this same date; and

3. That this action be, and it hereby is, dismissed and stricken from the docket, with the court retaining

---

[3]The parties' accord only resolves defendants' civil liability for the violations alleged in the Complaint. The United States may bring a future action for any violations not alleged in the complaint.

jurisdiction pursuant to Article XVIII of the consent decree and any other provision therein contemplating the potential for future action by the court.

The Clerk is requested to transmit this written opinion and order to all counsel of record and to any unrepresented parties.

DATED: April 30, 2009

_____
John T. Copenhaver, Jr.
United States District Judge