# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF WEST VIRGINIA by and through the WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, <br><br> Plaintiffs, <br><br> v. <br><br> PATRIOT COAL CORP.; MAGNUM COAL CO.; APOGEE COAL CO., LLC; CATENARY COAL CO., LLC; COYOTE COAL CO. LLC; DAKOTA LLC; HOBET MINING, LLC; JUPITER HOLDINGS LLC; LITTLE CREEK LLC; MIDLAND TRAIL ENERGY LLC; PANTHER LLC; REMINGTON LLC; WILDCAT, LLC; BLACK STALLION COAL CO., LLC; BLACK WALNUT COAL CO.; COLONY BAY COAL CO.; EASTERN ASSOCIATED COAL, LLC; HILLSIDE MINING CO.; JARRELL'S BRANCH COAL CO.; KANAWHA EAGLE COAL, LLC; LOGAN FORK COAL CO.; MARTINKA COAL CO., LLC; MOUNTAIN VIEW COAL CO., LLC; PINE RIDGE COAL CO., LLC; RIVERS EDGE MINING, INC.; and WINIFREDE DOCK LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CONSENT DECREE <br><br> 2:09-0099 |

# TABLE OF CONTENTS

I.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    APPLICABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.    CIVIL PENALTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VI.    COMPLIANCE REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VII.    INJUNCTIVE RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VIII.    ADDITIONAL INJUNCTIVE RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

IX.    REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

X.    STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

XI.    FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

XII.    DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

XIII.    INFORMATION COLLECTION AND RETENTION . . . . . . . . . . . . . . . . . . . 40

XIV.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS . . . . . . . . . . . . . . 42

XV.    COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

XVI.    NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

XVII.    EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

XVIII.    RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

XIX.    MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

XX.    TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

XXI.    PUBLIC PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

XXII.    SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

**XXIII.** **INTEGRATION** ................................................... 49

**XXIV.** **FINAL JUDGMENT** ................................................ 49

**XXV.** **APPENDICES** ...................................................... 49

# I. **BACKGROUND**

A.     Concurrent with the lodging of this Consent Decree, Plaintiffs, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the State of West Virginia (the "State") by and through the West Virginia Department of Environmental Protection ("WVDEP"), have filed a Complaint in this action against Defendants Patriot Coal Corporation, et al.[1]

B.     The Complaint alleges that Defendants violated Sections 301 and 402 of the Federal Water Pollution Control Act as amended by the Clean Water Act of 1977 and the Water Quality Act of 1987 ("CWA" or the "Act"), 33 U.S.C. §§ 1311 and 1342, and the West Virginia Water Pollution Control Act ("WPCA"), W. Va. Code § 22-11-8. Specifically, the Complaint alleges that Defendants discharged and continue to discharge pollutants into State waters and waters of the United States in violation of Section 301 of the Act, 33 U.S.C. § 1311 and Section 8 of the WPCA, W. Va. Code § 22-11-8, and of the conditions and limitations of National Pollutant Discharge Elimination System ("NPDES") permits issued to Defendants by the State pursuant to Section 402 of the Act, 33 U.S.C. § 1342, and Section 8 of the WPCA, W. Va. Code § 22-11-8.

C.     On January 25, 2008, EPA issued an information request to Magnum Coal Co. ("Magnum") pursuant to Section 308(a) of the Clean Water Act, 33 U.S.C. § 1318(a), requesting that Magnum provide information on behalf of itself and its subsidiaries, which include Apogee Coal

---

[1]     Patriot Coal Corp.; Magnum Coal Co.; Apogee Coal Co., LLC; Catenary Coal Co., LLC; Coyote Coal Co. LLC; Dakota LLC; Hobet Mining, LLC; Jupiter Holdings LLC; Little Creek LLC; Midland Trail Energy LLC; Panther LLC; Remington LLC; Wildcat, LLC; Black Stallion Coal Co., LLC; Black Walnut Coal Co.; Colony Bay Coal Co.; Eastern Associated Coal, LLC; Hillside Mining Co.; Jarrell's Branch Coal Co.; Kanawha Eagle Coal, LLC; Logan Fork Coal Co.; Martinka Coal Co., LLC; Mountain View Coal Co., LLC; Pine Ridge Coal Co., LLC; Rivers Edge Mining, Inc.; and Winifrede Dock LLC.

Co., LLC; Catenary Coal Co., LLC; Coyote Coal Co. LLC; Dakota LLC; Hobet Mining, LLC; Jupiter Holdings LLC; Little Creek LLC; Midland Trail Energy LLC; Panther LLC; Remington LLC; and Wildcat LLC (collectively, the "Magnum Subsidiaries").

D.    On April 7, 2008, Patriot Coal Corp. ("Patriot") initiated negotiations with the State regarding NPDES violations for certain of its West Virginia subsidiaries. On July 23, 2008, Patriot acquired Magnum. In light of the foregoing negotiations, the Parties have agreed that civil penalties for Patriot's non-Magnum subsidiaries in West Virginia, specifically Black Stallion Coal Co., LLC; Black Walnut Coal Co.; Colony Bay Coal Co.; Eastern Associated Coal, LLC; Hillside Mining Co.; Jarrell's Branch Coal Co.; Kanawha Eagle Coal, LLC; Logan Fork Coal Co.; Martinka Coal Co., LLC; Mountain View Coal Co., LLC; Pine Ridge Coal Co., LLC; Rivers Edge Mining, Inc.; and Winifrede Dock LLC (collectively, the "non-Magnum Subsidiaries"), for violations disclosed to the State through March 31, 2008 will be addressed in a State administrative settlement. All provisions of this Consent Decree shall apply to the non-Magnum Subsidiaries except for Section V (Civil Penalty).

E.    On September 5, 2008, WVDEP settled a lawsuit filed against Hobet Mining, LLC ("Hobet"), a subsidiary of Magnum, for discharges of selenium and other pollutants into state waters in violation of the West Virginia Water Pollution Control Act. The settlement resolves state claims associated with the following four NPDES permits: WV0099392, WV1016776, WV1020889, and WV1021028. Under the state settlement, Hobet agreed to pay state civil penalties and to implement injunctive relief measures for those four NPDES permits identified in the state settlement. The four Hobet permits addressed in the state settlement are also included in this Consent Decree and all provisions of this Consent Decree shall apply except for Section V (Civil Penalty).

F.    The Parties recognize, and the Court by entering this Consent Decree finds, that this

2

Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Parties and over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b).

2.      Venue is proper in the Southern District of West Virginia pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), as well as Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), because it is the judicial district in which Defendants are located, reside, and/or are doing business, and/or in which the violations alleged in the Complaint occurred.

3.      For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and consent to venue in this judicial district.

4.      For purposes of this Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Sections 301 and 402 of the Act, 33 U.S.C. §§ 1311 and 1342, and West Virginia Code § 22-11-1 *et seq.*

## III.  APPLICABILITY

5.      The provisions of this Consent Decree apply to and are binding upon the United States and the State, and upon Defendants and any successors, assigns, or other entities, or persons otherwise bound by law.

6.      No transfer of ownership or operation of any Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligation to ensure that

the terms of the Decree are implemented. Prior to any transfer, the applicable Defendant(s) shall provide a copy of this Consent Decree to the proposed transferee and require the transferee to provide written confirmation acknowledging the terms of the Decree. Within five Days of such transfer, the applicable Defendant(s) shall provide written notice of the transfer, together with a copy of any written agreements effectuating such a transfer and the aforementioned acknowledgement letter, to EPA Region 3, the State, and the United States Department of Justice ("DOJ"), in accordance with Section XVI of this Decree (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

7.     Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

8.     In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## IV.  **DEFINITIONS**

9.     Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

4

a. "Audit Findings" shall mean a written summary of all instances of noncompliance with the EMS Manual noted during the EMS Audit conducted pursuant to Paragraph 32 of this Decree, and all areas of concern identified during the course of that audit which, in the EMS Auditor's judgment, merit further review or evaluation for potential EMS, environmental, or regulatory impacts;

b. "Audit Response and Action Plan" shall mean a comprehensive plan for bringing the Facilities into full compliance with the EMS Manual and fully addressing all Audit Findings identified in the EMS Audit Report;

c. "Complaint" shall mean the complaint filed by the United States and the State in this action concurrent with the lodging of this Decree;

d. "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXV);

e. "Daily Violation" shall mean (i) any exceedance of a maximum daily discharge limitation for any parameters set forth in Defendants' NPDES permits, as determined by a DMR Sample, or (ii) any failure to attain a minimum daily discharge limitation for pH set forth in Defendants' NPDES permits, as determined by a DMR Sample;

f. "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

g. "Defendants" shall mean the persons or entities named in the Complaint;

h. "Discharge Monitoring Report Sample" or "DMR Sample" shall mean a sample taken in accordance with approved test procedures under 40 C.F.R. Part 136;

i.      "Effective Date" shall have the definition provided in Section XVII;

j.      "Effluent Limit Violation" shall mean a Daily Violation or a Monthly Violation;

k.      "Environmental Management System" or "EMS" refers to the integrated system created by the EMS Consultant pursuant to Paragraph 27.b, meeting the requirements set forth in Appendix A;

l.      "EMS Auditor" shall mean the independent third party meeting the requirements of Paragraph 31, who is approved by EPA, in consultation with the State, and contracted by the Defendants to perform the duties set forth in Paragraph 32, including an evaluation of the adequacy of EMS implementation relative to the EMS Manual;

m.      "EMS Audit Report" shall mean a report setting forth the Audit Findings resulting from the EMS Audit conducted pursuant to Paragraph 32 of this Decree, which meets all the requirements set forth in Paragraph 32.b;

n.      "EMS Consultant" shall mean the independent third party meeting the requirements of Paragraph 26, who is approved by EPA, in consultation with the State, and contracted by the Defendants to perform the duties set forth in Paragraph 27, including the development of an EMS and EMS Manual for Defendants;

o.      "EMS Manual" shall mean the document created by the EMS Consultant and approved by EPA pursuant to Paragraph 27.c, which describes and documents the integrated EMS developed for the Defendants and contains an EMS implementation schedule;

p.      "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

q.     "Facility" or "Facilities" shall mean Defendants' mining operations, including but not limited to, surface and underground mines, coal processing and preparation plants, coal transportation facilities, Reclaimed Sites, and all associated operations;

r.     "Initial Review and Evaluation" shall mean an evaluation of Defendants' existing environmental management practices and documents to identify where systems or subsystems have not been adequately developed or implemented, or need to be enhanced, or new management systems or subsystems need to be developed to adequately address the elements set forth in Appendix A;

s.     "Monthly Violation" shall mean any exceedance of an average monthly discharge limitation for any parameters set forth in Defendants' NPDES permits, as determined by a DMR Sample;

t.     "NOVs" shall mean notices of violation under the West Virginia Surface Coal Mining and Reclamation Act, W.Va. Code § 22-3-17 (2004);

u.     "NPDES" shall mean the National Pollutant Discharge Elimination System defined in 40 C.F.R. § 122.2 and any State-issued NPDES permit;

v.     "Outlet" shall mean an NPDES permitted discharge point;

w.     "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

x.     "Parties" shall mean the United States, the State of West Virginia, and Defendants;

y.     "Persistent Noncompliance Issues" shall mean three or more Effluent Limit Violations of a given parameter at an Outlet within any 12-month period;

z. "Reclaimed Sites" shall mean Facilities that have been regraded to "Phase I" bond release standards under the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201, *et seq.*;

aa. "Section" shall mean a portion of this Decree identified by a Roman numeral;

bb. "State" shall mean the State of West Virginia; and

cc. "United States" shall mean the United States of America, acting on behalf of EPA.

## V. CIVIL PENALTY

10. Within 60 Days after the Effective Date of this Consent Decree, Defendants shall pay a total of $6,500,000 as a civil penalty to the United States and the State, plus an additional sum for interest. Beginning on the 31st Day after the Effective Date, interest shall accrue on the total civil penalty amount at the rate provided for in 28 U.S.C. § 1961. Defendants may accelerate their payment of civil penalty, and interest due on the accelerated payment shall be reduced accordingly.

11. Fifty five percent of the civil penalty and accrued interest under this Section shall be paid to the United States and forty-five percent of the civil penalty and accrued interest under this Section shall be paid to the State.

12. Defendants shall make payments to the United States under this Section by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendants, following entry of this Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Southern District of West Virginia, U.S. Courthouse, 300 Virginia St. S.E., Charleston, WV 25301, 304-345-2200. At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to

8

this Consent Decree in *United States v. Patriot Coal Corp., et al.*, and shall reference the DOJ case number, 90-5-1-1-09476, to the United States in accordance with Section XVI of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

13.     Defendants shall make payments to the State under this Section by certified or cashier's check to the WVDEP for deposit in the WVDEP's Stream Restoration Fund. Payments shall be mailed to:

> Jeff McCormick, Assistant Director
> Division of Mining and Reclamation,
> West Virginia Department of Environmental Protection
> 601 57th Street, SE, Charleston, WV 25304

Notice of payment shall be provided to: Chief Inspector, Environmental Enforcement, West Virginia Department of Environmental Protection, 601 57th Street, SE, Charleston, WV 25304.

14.     Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section X (Stipulated Penalties) in calculating its federal or state or local income tax.

## VI. COMPLIANCE REQUIREMENTS

15.     This Consent Decree in no way affects or relieves Defendants of their responsibility to comply with applicable federal, state, and local laws, regulations, and permits.

16.     Defendants shall perform the work required by this Consent Decree in compliance with the requirements of all applicable federal, state, and local laws, regulations, and permits. This Consent Decree should not be considered as a permit issued pursuant to any federal, state, or local statute or regulation.

17.     Approval of Deliverables. After review of any plan, report, or other item that is

9

required to be submitted pursuant to this Consent Decree, EPA, after consultation with the State, shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

18.     If the submission is approved pursuant to 17(a), Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part, pursuant to Paragraph 17(b) or 17(c), Defendants shall, upon written direction from EPA, after consultation with the State, take all actions required by the approved plan, report, or other item that EPA, after consultation with the State, determines are technically severable from any disapproved portions, subject to Defendants' right to dispute only the specified conditions or the disapproved portions, under Section XII of this Decree (Dispute Resolution).

19.     If the submission is disapproved in whole or in part pursuant to Paragraph 17(c) or (d), Defendants shall, within 45 Days of receipt of disapproval or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with the preceding Paragraph.

20.     Any stipulated penalties applicable to the original submission, as provided in Section X of this Decree (Stipulated Penalties), shall accrue during the 45-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is materially disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

21.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole

or in part, EPA, after consultation with the State, may again require Defendants to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Defendants' right to invoke Dispute Resolution under Section XII and the right of EPA to seek stipulated penalties as provided in the preceding Paragraph.

22. <u>Permits</u>. Where any compliance obligation under this Section requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and substantially complete applications and take all other actions necessary to obtain all such permits or approvals. Defendants may seek relief under the provisions of Section XI of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and substantially complete applications and have taken all other actions necessary to obtain all such permits or approvals.

23. <u>Contractors Protocol</u>. Within 5 Days of entry of this Consent Decree, Defendants shall provide a copy of the Decree to all contractors with responsibilities under this Decree. Within 15 Days of entry of this Consent Decree, Defendants shall refine protocols for contractors with responsibility for conducting Outlet sampling to comply with the requirements of Paragraph 35. Within 60 Days of the entry of this Consent Decree, Defendants shall refine protocols for all other contractors with responsibilities under this Decree to comply with the terms of this Decree. Within 60 Days of the approval of the EMS Manual pursuant to Paragraph 27.c, Defendants shall refine protocols for all contractors with responsibilities under the EMS Manual to comply with the terms of the Manual.

24. Defendants and their contractors shall exercise best efforts to comply with all deadlines in Paragraphs 27, 38, and 42. If however, despite best efforts by Defendants and their

contractors, Defendants are unable to meet the deadlines in Paragraphs 27, 38, and 42, Defendants may apply to EPA for an extension of time. Defendants must apply for an extension in writing at least 10 business days prior to the expiration of the deadline. Such application shall include an explanation and description of the reasons for delay and all supporting documentation, including documentation from the contractor, along with the requested extension of time and basis for the amount of time requested.

a. If EPA, after reasonable opportunity for review and comment by the State, agrees that the delay was warranted, EPA shall notify Defendants in writing of the length of the extension. An extension of time pursuant to this Paragraph shall not, of itself, extend the time for performance of any other obligation.

b. If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay was warranted, EPA will notify Defendants in writing of its decision.

## VII. <u>INJUNCTIVE RELIEF</u>

### Environmental Management System

25. In accordance with the procedure set forth in Paragraph 26, Defendants shall hire an EMS Consultant to complete an Initial Review and Evaluation and develop an integrated Environmental Management System for Defendants. Defendants shall bear all costs associated with the EMS Consultant, cooperate fully with the EMS Consultant, and provide the EMS Consultant with access to all records, employees, contractors, and Facilities that the EMS Consultant deems reasonably necessary to effectively perform the duties described in Paragraph 27.

26. <u>Selection of EMS Consultant</u>. No later than 10 Days after the Effective Date of this Consent Decree, Defendants shall submit to EPA and the State a list of two or more proposed consultants to serve as EMS Consultant, along with (a) the name, affiliation, and address of the

proposed consultants; (b) information demonstrating how each proposed consultant satisfies the

EMS auditor qualification requirements of Table 1 in ISO 19011 (First edition, 2002-10-01) and has

experience in developing and implementing an EMS; (c) information demonstrating that the team

proposed to conduct the Initial Review and Evaluation, in composite, has a working process

knowledge of the Facilities or similar operations, and has a working knowledge of federal and state

environmental requirements which apply to the Facilities; and (d) descriptions of any previous work

contracts, or financial relationships with Defendants.

a.     Within 30 Days of receiving the list of proposed consultants, EPA, in

consultation with the State, shall notify Defendants of whether it approves any consultant(s) on the

list. If EPA, after consultation with the State, does not approve any of the proposed consultants on

Defendants' list, then Defendants shall submit another list of proposed consultants to EPA and the

State within 30 Days of receipt of EPA's written notice. If after Defendants have submitted a third

list of consultants, which must be submitted within 30 Days of receipt of written notice that EPA has

not approved any of the consultants on Defendants' second list, the Parties are unable to agree on an

EMS Consultant, the Parties agree to resolve the selection of the EMS Consultant through the

Dispute Resolution process in Section XII.

b.     Within 10 Days after receipt of EPA's approval, Defendants shall select one

consultant from those approved by EPA and shall enter into a contract with the consultant to perform

all duties described in Paragraph 27. In the event the consultant(s) approved by EPA are no longer

available or willing to accept the work described in Paragraph 27 when notified of their selection by

Defendants, then Defendants shall select another consultant approved by EPA and enter into the

contract to perform all duties described in Paragraph 27 within 30 Days.

27.     <u>Duties of the EMS Consultant</u>. Defendants' contract with the EMS Consultant shall

require the EMS Consultant to perform the following duties:

　　　　a. Conduct and complete an Initial Review and Evaluation for all Defendants, prepare a report of the results, and provide such report to Defendants within 60 Days of the date of the contract. This report shall also be provided to EPA and the State, upon request;

　　　　b. Based on the Initial Review and Evaluation results, the requirements of this Consent Decree, and any other relevant information, develop an integrated EMS for the Defendants addressing, at a minimum, the 12 key elements in Appendix A;

　　　　c. Within 8 months of the date of the contract, draft and submit to EPA and the State for review and approval an EMS Manual which describes and documents the integrated EMS developed for the Defendants pursuant to Paragraph 27.b and contains an EMS implementation schedule for each of the described systems and subsystems not already fully implemented. The EMS Manual shall (i) describe or contain, as appropriate, overarching policies, procedures, and programs that compose the EMS framework, and respective management systems, subsystems, and tasks for the elements listed in Appendix A, and (ii) describe specific procedures for implementing the requirements of this Consent Decree set forth in Paragraphs 34-51, including but not limited to (1) protocols for Outlet Inspections, Internal Environmental Audits, and Third-Party Environmental Audits pursuant to Paragraphs 35-37; (2) specifications for the annual training required by Paragraphs 50 and 51, and (3) a framework and set of requirements for environmental organizational management and management notification of environmental violations.

　　28. Upon Defendants' receipt of EPA's approval of the EMS Manual, Defendants shall commence implementation of the EMS in accordance with the schedule contained in the EMS Manual. Managers responsible for environmental compliance at each Facility shall thereafter include a certification of compliance with the approved EMS Manual in quarterly reports to

appropriate management at Patriot and Magnum pursuant to Paragraph 48, or, for any noncompliance, shall submit in the quarterly reports an explanation of the cause of the noncompliance, remedial steps to be taken, and a date for achieving compliance.

29.     Revisions of the EMS Manual.  Any revisions to the EMS Manual subsequent to its initial approval must be submitted to EPA for review.  Material revisions must be approved by EPA. EPA shall notify Defendants within 30 Days of its receipt of the proposed revisions whether approval of those revisions will be required.

## EMS Audit

30.     In accordance with the procedure set forth in Paragraph 31, Defendants shall hire an EMS Auditor to conduct an EMS Audit pursuant to Paragraph 32.  Defendants shall bear all costs associated with the EMS Auditor, cooperate fully with the EMS Auditor, and provide the EMS Auditor with access to all records, employees, contractors, and Facilities that the EMS Auditor deems reasonably necessary to effectively perform the duties described in Paragraph 32.

31.     Selection of EMS Auditor.  Within 1 year of EPA's approval of the EMS Manual, Defendants shall propose to EPA and the State for approval the selection of two or more proposed EMS Auditors who meet the qualification requirements of Table 1 in ISO 19011 (First edition, 2002-10-01) and have expertise and competence in the regulatory programs under federal and state environmental laws.  The proposed EMS Auditors must have no direct financial stake in the outcome of the EMS Audit conducted pursuant to this Consent Decree.  Defendants shall disclose to EPA any past or existing contractual or financial relationships when the proposed EMS Auditors are identified.

a.      Within 30 Days of receiving the list of proposed EMS Auditors, EPA, in consultation with the State, shall notify Defendants of whether it approves any auditor(s) on the list.

If EPA, after consultation with the State, does not approve any of the proposed EMS Auditors on Defendants' list, then Defendants shall submit another list of proposed EMS Auditors to EPA and the State within 30 Days of receipt of EPA's written notice. If after Defendants have submitted a third list of proposed EMS Auditors, which must be submitted within 30 Days of receipt of written notice that EPA has not approved any of the auditors on Defendants' second list, the Parties are unable to agree on an EMS Auditor, the Parties agree to resolve the selection of the EMS Auditor through the Dispute Resolution process in Section XII.

b.      Within 10 Days of the date that EPA notifies Defendants of the approval of the proposed EMS Auditor, Defendants shall retain the proposed EMS Auditor, thereafter designated the "EMS Auditor," to perform an EMS Audit as further described in Paragraph 32 below.

32.    Duties of the EMS Auditor. Defendants' contract with the EMS Auditor shall require the EMS Auditor to perform the following duties:

a.      Within 90 Days of the date of its contract with Defendants, the EMS Auditor shall perform an audit of Defendants' EMS (the "EMS Audit"). The EMS Audit shall evaluate the adequacy of EMS implementation relative to the EMS Manual and identify areas of concern, from top management down, throughout each major organizational unit with responsibilities under the EMS Manual. The EMS Audit shall be conducted in accordance with ISO 19011 (First edition, 2002-10-01), and shall determine the following:

(i)      Whether there is a defined system, subsystem, program, or planned task for the respective EMS element;

(ii)     To what extent the system, subsystem, program, or task has been implemented, and is being maintained;

(iii)    The adequacy of each Facility's internal self-assessment procedures

16

for programs and tasks composing the EMS;

(iv)    Whether Defendants are effectively communicating environmental requirements to affected parts of the organization, or those working on behalf of the organization;

(v)    Whether further improvements should be made to the EMS and EMS Manual; and

(vi)    Whether there are deviations from Defendants' written requirements or procedures.

b.    Within 30 Days following the completion of the EMS Audit, the EMS Auditor shall develop and concurrently submit an EMS Audit Report to Defendants, EPA, and the State. The EMS Audit Report shall contain: (i) a summary of the audit process, including any obstacles encountered; (ii) detailed Audit Findings, including the basis for each finding and each area of concern identified; (iii) identification of any Audit Findings corrected or areas of concern addressed during the audit; (iv) recommendations for resolving any area of concern or otherwise achieving full implementation of the EMS Manual; and (v) certification that the EMS Audit was conducted in accordance with the provisions of this Decree.

33.    Follow-Up Corrective Measures.    Within 60 Days of receiving the EMS Audit Report, Defendants shall submit to EPA and the State for review and approval a report responding to the Audit Findings and areas of concern identified in the EMS Audit Report and providing an action plan for expeditiously coming into full conformance with the provisions in the EMS Manual (the "Audit Response and Action Plan"). The Audit Response and Action Plan shall include the result of any root cause analysis, specific deliverables, responsibility assignments, and an implementation schedule for the identified actions and measures, including those that may have already been

17

completed.

       a.      EPA, after consultation with the State, will provide comments on the Audit Response and Action Plan and Defendants shall, within 30 Days of receipt of EPA's comments on the Audit Response and Action Plan, submit to EPA a Final Audit Response and Action Plan responding to and addressing EPA's comments.

       b.      After making any necessary modifications to the Audit Response and Action Plan based on EPA comments, if any, Defendants shall implement the final Audit Response and Action Plan in accordance with the schedules set forth therein.

<strong>Audits and Inspections</strong>

34.    <u>Initial Treatment Systems Audits</u>. Defendants shall conduct an audit of the treatment systems for each Outlet to determine whether the treatment systems in place are adequate to maintain environmental compliance at the Facilities.

       a.      The Initial Treatment Systems Audits shall be conducted according to the following schedule:

       (i)      Within 30 Days of entry of this Consent Decree, Defendants shall audit all Outlets for which a chemical treatment system is currently installed to control any parameter in any NPDES permit and all Outlets with Persistent Noncompliance Issues;

       (ii)      Within 60 Days of entry of this Consent Decree, Defendants shall audit all Outlets for which a sediment pond is currently installed to control any parameters within an NPDES permit, with the exception of Outlets with on-bench sediment treatment control;

       (iii)      Within 90 Days of entry of this Consent Decree, Defendants shall audit all remaining Outlets.

       b.      Initial Treatment System Audits under Subparagraph 34.a.i shall be conducted

18

by a third-party consultant with at least five years of experience with the requirements of NPDES and SMCRA permits and with treatment systems for and control of relevant effluent parameters in Defendants' NPDES permits. Initial Treatment System Audits under Subparagraphs 34.a.ii and 34.a.iii and subsequent Treatment System Audits pursuant to Paragraph 36 shall be conducted under the direction or supervision of a registered professional engineer with experience with NPDES and SMCRA requirements and with treatment systems for and control of relevant effluent parameters in Defendants' NPDES permits.

        c.     Based on the results of the audits, Defendants shall identify for each Outlet any alterations and/or maintenance measures to its associated treatment systems that must be taken to achieve and maintain environmental compliance and a schedule for such alterations and/or maintenance measures.

        d.     All alterations and/or maintenance measures identified by the Initial Treatment System Audits must be completed within 120 Days of the entry of this Consent Decree.

35.    <u>Outlet Inspections</u>. Starting with the first full month after the entry of this Consent Decree, Defendants shall conduct Outlet Inspections at least twice a month, at the time of DMR Sampling. Outlet Inspections shall be conducted pursuant to an Outlet Inspection Checklist created by Defendants, which shall include entries for whether: (a) the Outlet is accessible; (b) the Outlet is unobstructed; (c) discharge markers are visible at the Outlet; (d) there is any water flow at the Outlet; (e) there are any visual indications of overtopping of the pond or other drainage system; (f) there is a buildup of sediment at the Outlet or any other location in the pond or other drainage system; (g) there is any indication of erosion or other damage to the embankment of the pond or other drainage system; (h) baffles and retention curtains are in place; (i) chemical treatment systems are operational; and (j) required lock boxes are in place on chemical treatment valves. The Outlet

Inspection Checklist shall be completed at the time of each Outlet Inspection, shall indicate the date and time of completion, and shall be signed by the individual completing the Outlet Inspection.

36.     Internal Environmental Audits. Defendants shall conduct Internal Environmental Audits at each Facility, which shall be conducted under the direction or supervision of a registered professional engineer who may be a contractor selected to undertake the requirements established by this Paragraph.

        a.     The Internal Environmental Audits shall include, but not be limited to: (i) a treatment system audit pursuant to the requirements of Paragraph 34, (ii) visual inspections to assess the structural integrity of all slurry pipes, and (iii) an evaluation of compliance in the following areas: (1) Trash and Scrap Metal; (2) Drainage and Sediment Control; (3) Oil and Fuel Handling; (4) Roads; (5) Septic Systems; and (6) Batteries.

        b.     Internal Environmental Audits shall be conducted at each Reclaimed Site on an annual basis, and shall include all elements of Paragraph 36.a, as applicable. Internal Environmental Audits shall be conducted at all other Facilities on a quarterly basis, and shall include all elements of Paragraph 36.a.

37.     Third-Party Environmental Audits. Defendants shall conduct Third-Party Environmental Audits annually at each Facility. Audits under this Paragraph shall evaluate compliance with this Consent Decree and with the following statutes: Clean Air Act, Clean Water Act, Comprehensive Environmental Response, Compensation and Liability Act, Emergency Planning and Community Right to Know Act, Resource Conservation and Recovery Act, Toxic Substances Control Act, and environmental provisions of the Surface Mining, Control and Reclamation Act.

38.     Audit Database. The results of each of the audits and inspections conducted pursuant

20

to Paragraphs 34-37 shall be entered into an electronic Audit Database within 48 hours of completion. The Audit Database shall include: (a) the date of the audit/inspection; (b) the names of the individuals conducting the audit/inspection; (c) a description of any noncompliances or other areas of concern; (d) the applicable permit number and Outlet; and (e) the planned response to any noncompliances or areas of concern, the individuals responsible for the response, the deadline for the response, and the date of completion of the response. Responses to a noncompliance or other problem identified by an audit or inspection conducted pursuant to Paragraphs 34-37 shall be completed as expeditiously as possible, and in no event shall take longer than 45 Days to complete, unless an extension of time is granted by EPA. Responses that are not completed by the deadline initially assigned in the Audit Database shall be reported to appropriate management at Magnum and Patriot as part of the quarterly report identified in Paragraph 48. Defendants may combine this database with the Violations Database required by Paragraph 42.

39.     Defendants shall provide access to the Audit Database to EPA and the State upon request. In addition, Defendants shall produce any requested information from the Audit Database to EPA and the State within 10 Days of the request.

40.     Prior to completion of the Audit Database, Defendants shall implement interim data-tracking measures meeting the requirements of Paragraph 38, which are the functional equivalent of the Audit Database.

### DMR Sample Notification and Violation Tracking

41.     Electronic Notification: Within 10 Days of entry of this Consent Decree, Defendants shall implement a system which provides for electronic notification within 48 hours of all DMR Sample results to the manager responsible for environmental compliance at the related Facility. The notification shall include all pollutants that are regulated under effluent limits contained in

21

Defendants' NPDES permits, and shall indicate where laboratory results show an Effluent Limit Violation, identifying the Outlet and date when the violation occurred.

42.  Violations Database. Within 6 months of entry of this Consent Decree, Defendants shall create an electronic Violations Database for each Facility that includes the following information for each Effluent Limit Violation at each Outlet over the preceding five years:

a.  Identification of Outlet by NPDES and SMCRA permit numbers, permittee, and latitude and longitude;

b.  Dates of DMR Samples and DMR Sample results;

c.  NPDES effluent limit that was exceeded;

d.  Percentage by which the limit was exceeded;

e.  Number of Effluent Limit Violations in a row for the same parameter;

f.  Number of Effluent Limit Violations for that particular parameter over the preceding 12 months; and

g.  Total number of Effluent Limit Violations at that particular Outlet over the preceding 12 months.

43.  The Violations Database shall be updated with all Effluent Limit Violations immediately upon receipt of electronic notice pursuant to Paragraph 41. In addition to the information required by Subparagraphs 42.a-42.g, updates to the Violations Database under this Paragraph shall include the following information:

a.  A description of the cause of the Effluent Limit Violation and the planned response to the Effluent Limit Violation, taking into account any applicable information in the Audit Database and any required actions under Paragraph 49 (Effluent Limit Violation Response);

b.  Applicable stipulated penalties; and

22

      c.      Date that Effluent Limit Violation ended (if applicable).

44.      The Violations Database shall also include entries for any additional CWA violations that occur subsequent to the creation of the Database pursuant to Paragraph 42, including NOVs or unauthorized discharges, along with the following information:

      a.      Permit number;

      b.      Description of violation;

      c.      Date of violation;

      d.      Cause of violation and planned response, taking into account any applicable information in the Audit Database; and

      e.      Date that noncompliance ended (if applicable).

45.      Prior to completion of the Violations Database, Defendants shall implement interim data-tracking measures meeting the requirements of Paragraphs 42-44, which are the functional equivalent of the Violations Database.

46.      Defendants shall provide access to the Violations Database to EPA and the State upon request. In addition, Defendants shall produce any requested information from the Violations Database to EPA and the State within 10 Days of the request.

47.      Where any Effluent Limit Violation occurs, Defendants shall provide on a weekly basis the following information to the West Virginia Department of Environmental Protection: (a) permit number, (b) Outlet identification, (c) pollutant parameter, and (d) DMR Sample result.

### Quarterly Reports

48.      The manager responsible for environmental compliance at each Facility shall submit quarterly reports to appropriate management at Magnum and Patriot, EPA, and the State on issues related to CWA and Consent Decree compliance. The quarterly reports shall be due at the end of the

month following the end of each quarter (i.e. by April 30, July 31, October 31, and January 31). The quarterly reports shall contain, at a minimum, the following:

a.   Information regarding any CWA violation, including (i) a summary of Effluent Limit Violations at the Facility, including total number of Effluent Limit Violations, total number of Outlets with two or more Effluent Limit Violations in a row of the same parameter, total number of Outlets with Persistent Noncompliance Issues, and total number of stipulated penalties accrued during that quarter; (ii) a summary of any additional CWA violations, including NOVs or unauthorized discharges; (iii) a summary of steps taken or planned steps to remedy the violations identified in (i) and (ii); and (iv) a copy of the Violations Database entries for the relevant quarter;

b.   A summary of any instances in which an audit response was not completed by the deadline initially assigned in the Audit Database; and

c.   A certification of compliance with the approved EMS Manual, or, for any noncompliance, an explanation of the cause of the noncompliance and remedial steps taken or to be taken.

### Effluent Limit Violation Response

49.   Within 60 Days of entry of this Consent Decree, Defendants shall implement a response plan for Effluent Limit Violations, which shall provide for investigation of Effluent Limit Violations and implementation of actions necessary to achieve compliance with the applicable NPDES permit limits. This response plan shall, at a minimum, provide for the following response actions at all Outlets in addition to the requirements of Paragraph 43:

a.   Daily Violation Response

(i)   Category 1 Daily Violation.  Upon notification of the first Daily Violation at any Outlet, Defendants shall begin daily monitoring and sampling of discharges and

24

implement treatment measures until the Outlet returns to compliance (i.e. one compliant DMR Sample result). Any sample taken within 48 hours of notification of the first Daily Violation that results in a Daily Violation for the same pollutant parameter at the same Outlet is a Category 1 Daily Violation.

(ii)     Category 2 Daily Violation. Any sample taken after 48 hours of notification of the first Daily Violation that results in a Daily Violation for the same pollutant parameter at the same Outlet and is not subject to Paragraph 49.a.iii or 49.a.iv is a Category 2 Daily Violation. Upon notification of the first Category 2 Daily Violation, Defendants shall either (1) continue daily monitoring, sampling, and treatment until the Outlet returns to compliance, or (2) hire a third-party consultant and comply with the terms of Paragraph 49.a.iv.

(iii)     Category 3 Daily Violation. Any sample taken after 48 hours of notification of the first Category 2 Daily Violation that results in a Daily Violation for the same pollutant parameter at the same Outlet and is not subject to Paragraph 49.a.iv is a Category 3 Daily Violation. Upon notification of the first Category 3 Daily Violation for the same pollutant parameter at the same Outlet, Defendants shall (1) continue daily monitoring, sampling, and treatment, (2) consult with an individual with substantial expertise in Clean Water Act compliance and in treatment systems for and control of relevant effluent parameters in Defendants' NPDES permits, and (3) implement measures recommended by that individual until the Outlet returns to compliance. Alternatively, Defendants may hire a third-party consultant and comply with the terms of Paragraph 49.a.iv of this Decree.

(iv)     Category 4 Daily Violation. Any sample taken after 48 hours of notification of the first Category 3 Daily Violation that results in a Daily Violation for the same pollutant parameter at the same Outlet is a Category 4 Daily Violation, until the Outlet returns to

compliance. Upon notification of the first Category 4 Daily Violation, Defendants shall hire a third-party consultant to examine the problem. Defendants shall continue daily monitoring, sampling, and treatment of discharges unless the consultant determines that daily monitoring, sampling, and treatment will not assist in examining and/or resolving the noncompliance. The consultant shall prepare a report detailing: (1) the cause of the continuing violations; (2) the appropriate level of monitoring and sampling; and (3) a plan to address the continuing violations. Defendants shall implement the proposed plan according to the consultant's recommendations within 30 Days of receipt of the report. The consultant's report and any documentation of actions taken shall be submitted to EPA, the State, and appropriate management at Magnum and Patriot in the quarterly report required by Paragraph 48.

  b.  Monthly Violation Response

    (i)  Category 1 Monthly Violation. Upon notification of the first Monthly Violation of a pollutant parameter at any Outlet ("Category 1 Monthly Violation"), Defendants shall conduct monitoring, sampling, and treatment as appropriate until the Outlet returns to compliance (i.e. until the Outlet meets the monthly average effluent limit).

    (ii)  Category 2 Monthly Violation. Upon notification of the second Monthly Violation in a row of the same pollutant parameter at the same Outlet ("Category 2 Monthly Violation"), Defendant shall either (1) conduct daily monitoring, sampling, and treatment until the Outlet returns to compliance, or (2) hire a third-party consultant and comply with the terms of Paragraph 49.b.iv of this Decree.

    (iii)  Category 3 Monthly Violation. Upon notification of the third Monthly Violation in a row of the same pollutant parameter at the same Outlet ("Category 3 Monthly Violation"), Defendants shall (1) continue daily monitoring, sampling, and treatment, (2) consult

with an individual with substantial expertise in Clean Water Act compliance and in treatment systems for and control of relevant effluent parameters in Defendants' NPDES permits, and (3) implement measures recommended by that individual until the Outlet returns to compliance. Alternatively, Defendants may hire a third-party consultant and comply with the terms of Paragraph 49.b.iv of this Decree.

(iv)    Category 4 Monthly Violation.  Upon notification of the fourth and any subsequent Monthly Violation in a row of the same pollutant parameter at the same Outlet ("Category 4 Monthly Violation"), Defendants shall hire a third-party consultant to examine the problem.  Defendants shall continue daily monitoring, sampling, and treatment of discharges unless the consultant determines that daily monitoring, sampling, and treatment will not assist in examining and/or resolving the noncompliance.  The consultant shall prepare a report detailing: (1) the cause of the continuing violations; (2) the appropriate level of monitoring and sampling; and (3) a plan to address the continuing violations.  Defendants shall implement the proposed plan according to the consultant's recommendations within 30 Days of receipt of the report.  The consultant's report and any documentation of actions taken shall be submitted to EPA, the State, and appropriate management at Magnum and Patriot in the quarterly report required by Paragraph 48.

c.    If an Outlet is subject to Paragraph 49.a and/or 49.b for the same pollutant parameter five separate times within a 12-month period, then Defendants shall comply with the response actions identified in Paragraph 49.a.iii or 49.b.iii.

### Training

50.    Defendants shall provide and require annual formal training for all individuals with environmental management responsibilities including, but not limited to: (a) Clean Water Act compliance, including sediment control technologies; (b) hazardous waste management compliance;

(c) requirements in the EMS Manual; and (d) obligations in this Consent Decree.

51.     Defendants shall provide and require appropriate annual training for all individuals, including all independent contractors, responsible for carrying out activities pursuant to this Consent Decree and/or any requirements in the EMS Manual.

## VIII.  ADDITIONAL INJUNCTIVE RELIEF

52.     <u>Water Quality Testing</u>. Defendants shall conduct Whole Effluent Toxicity ("WET") testing immediately downstream of ten different Outlets per year with specific conductance greater than 1500 uS/cm. Such testing shall be conducted on a semi-annual basis each year to capture variations in flow (low flow summer/fall and high flow winter/spring) pursuant to EPA Test Method Number 1002. Defendants shall have samples processed by a NELAC certified laboratory. Within 30 Days of entry of this Decree, Defendants shall submit a list of ten testing sites for approval to EPA. Within 30 Days of the end of a calendar year (i.e. December 31), Defendants shall submit to EPA a list of ten testing sites for approval for WET testing in the upcoming year. Once each year, Defendants shall perform a macroinvertebrate Rapid Bioassessment Protocol ("RBP", genus-level) at each test site along with a RBP Habitat Assessment at the same time samples are collected for WET testing. RBP assessments shall be made in accordance with the most recent WVDEP methodology. All test results shall be sent to EPA annually pursuant to Section IX (Reporting Requirements).

53.     <u>Stream Restoration</u>. Defendants shall implement five stream restoration projects in watersheds of the State, in accordance with the principles expressed in the "Stream Restoration Plan for a 25-Mile Section of the Little Coal River," dated August 31, 2006, attached as Appendix B of this Consent Decree. Within 30 Days of entry of this Consent Decree, WVDEP, in consultation with EPA, will identify to the Defendants qualifying projects in watersheds impacted by Defendants'

28

Facilities. Within 60 Days of identification by WVDEP, Defendants shall submit to WVDEP and EPA for approval a plan and schedule for completion of five of the identified projects. All five stream restoration projects implemented pursuant to this Paragraph shall be completed within three years of entry of this Consent Decree.

54. Defendants are responsible for the satisfactory completion of the Additional Injunctive Relief under this Section in accordance with the requirements of this Decree. Defendants may use contractors or consultants in planning and implementing the Additional Injunctive Relief.

55. For all requirements under this Section, Defendants certify the truth and accuracy of each of the following:

a. that, as of the date of executing this Decree, Defendants are not required to perform or develop any portion of this Additional Injunctive Relief by any federal, state, or local law or regulation and are not required to perform or develop this Additional Injunctive Relief by agreement, grant, or as injunctive relief awarded in any other action in any forum;

b. that Defendants were not planning or intending to perform this Additional Injunctive Relief other than in settlement of the claims resolved in this Decree; and

c. that Defendants have not received and shall not receive credit for any portion of this Additional Injunctive Relief in any other enforcement action.

## IX. REPORTING REQUIREMENTS

56. Defendants shall submit to EPA and the State semi-annual reports at the end of the month following the end of the second and fourth quarters (i.e. July 31 and January 31). Each written semi-annual report shall include:

a. The status of EMS implementation;

b. The status of Consent Decree implementation, including the status of any

29

construction or compliance measures, and problems encountered or anticipated, together with implemented or proposed solutions;

      c.      A description of any noncompliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and the remedial steps taken, or to be taken, to prevent or minimize such violation;

      d.      A description of each Decree violation for which Defendants have submitted to EPA an unresolved Force Majeure claim or intend to submit a Force Majeure claim pursuant to Section XI of this Consent Decree;

      e.      Notice of payment of stipulated penalties pursuant to Paragraphs 75-76;

      f.      A copy of any consultant reports generated pursuant to Paragraph 49 during the previous quarter, and any documentation of actions taken in response to the report(s); and

      g.      A copy of the Report submitted to Patriot and Magnum management pursuant to Paragraph 48.

     57.     Defendants shall submit to EPA and the State an annual report within 30 Days after the end of each calendar year, which shall (a) detail the responses taken or responses planned for each finding of noncompliance in the annual Third Party Environmental Audit and (b) provide results of all WET testing undertaken pursuant to Paragraph 52.

     58.     If Defendants violate, or have reason to believe that they may violate, any requirement of this Consent Decree, Defendants shall notify the United States and the State of such violation and its likely duration, in writing, within 7 Days of the day Defendants first become aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendants shall so state in the report. Defendants shall

investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the day Defendants become aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section XI of this Consent Decree (Force Majeure).

59.     Whenever any violation of this Consent Decree or of any applicable permit or any other event affecting Defendants' performance under this Decree, or the performance of its Facilities, may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA and the State orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendants first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

60.     All reports shall be submitted to the persons designated in Section XVI of this Consent Decree (Notices).

61.     Each report submitted by Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

62.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligation required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

63.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## X.   **STIPULATED PENALTIES**

64.     Defendants shall be liable for stipulated penalties to the United States and the State for violations as specified below, unless excused under Section XI (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

65.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

66.     Either Plaintiff may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

67.     Stipulated penalties shall continue to accrue as provided in Paragraph 65 during any Dispute Resolution under Section XII, but need not be paid until the following:

        a.     If the dispute is resolved by agreement or by a decision of EPA or the State that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States and the State within 30 Days of the Effective Date of the

agreement or the receipt of EPA's or the State's decision or order.

b.     If the dispute is appealed to the Court and the United States or the State prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, to the United States and the State within 60 Days of receiving the Court's decision or order, except as provided in subparagraph (c), below.

c.     If any Party appeals the Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

68.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

69.     Subject to the provisions of Section XIV of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or the State for Defendants' violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of relevant statutory or regulatory requirements, Defendants shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

70.     The Defendant shall pay fifty percent of the total stipulated penalty amount due to the United States and fifty percent to the State.

71.     <u>Non-Compliance with Consent Decree</u>.  The following stipulated penalties shall

accrue per violation per Day for each violation of any requirement of this Consent Decree, except for the Reporting Requirements of Section IX (Reporting Requirements):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 per Day or portion thereof | 1st through 14th Day |
| $2,500 per Day or portion thereof | 15th through 30th Day |
| $4,500 per Day or portion thereof | 31st Day and beyond |

72.  Non-Compliance with Reporting Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of the Reporting Requirements under Section IX of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 per Day or portion thereof | 1st through 14th Day |
| $500 per Day or portion thereof | 15th through 30th Day |
| $1,250 per Day or portion thereof | 31st Day and beyond |

73.  Defendants shall pay any stipulated penalty pursuant to Paragraphs 71 and 72 to the United States and the State within 30 Days of receiving a written demand by either Plaintiff. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other.

74.  Defendants shall pay stipulated penalties owing to the United States pursuant to Paragraphs 71 and 72 in the manner set forth in Paragraph 12 and with the confirmation notices and transmittal letter information required by Paragraph 12, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid. Defendants shall pay stipulated penalties owing to the State pursuant to Paragraphs 71 and 72 in the manner set forth in Paragraph 13 and with the confirmation notice required by Paragraph 13, except that the notice shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

75.  Non-Compliance with NPDES Permit Limits. The following stipulated penalties

shall accrue for each Effluent Limit Violation by one of Defendants' Facilities after the Effective

Date of this Consent Decree:

| Per Daily Violation | Period of Noncompliance |
|---|---|
| $1,000 | 1st Daily Violation; Category 1 Daily Violation |
| $2,500 | Category 2 Daily Violation |
| $5,000 | Category 3 Daily Violation; Category 4 Daily Violation |

| Per Monthly Violation | Period of Noncompliance |
|---|---|
| $2,000 | Category 1 Monthly Violation |
| $5,000 | Category 2 Monthly Violation |
| $10,000 | Category 3 Monthly Violation; Category 4 Monthly Violation |

76.     Defendants shall pay any stipulated penalties due as a result of Effluent Limit

Violations under Paragraph 75 at the end of the month following the end of each quarter (i.e., by

April 30, July 31, October 31, and January 31), except as provided in Paragraph 77.  Defendants

shall make payments to the United States by FedWire Electronic Funds Transfer following the

procedure specified in Paragraph 12, and notice of such payment shall be sent to EPA with

Defendants' semi-annual reports required by Paragraph 56.  Defendants shall make payments to the

State following the procedure specified in Paragraph 13, and notice of such payment shall be sent to

the State with Defendants' semi-annual reports required by Paragraph 56.

77.     Stipulated penalties under Paragraph 75 shall not apply to the permits subject to the

pending and pre-existing State settlements specifically referenced in Paragraphs D or E of this

Consent Decree during the term of either such settlement.  Upon termination of either such State

settlement, stipulated penalties under Paragraph 75 shall apply.

## XI.  FORCE MAJEURE

78.     "Force Majeure," for purposes of this Consent Decree, is defined as any event arising

from causes beyond the control of Defendants, of any entity controlled by Defendants, or of

Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

79. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendants shall provide notice orally or by electronic or facsimile transmission to EPA and the State within 72 hours of when Defendants first knew that the event might cause a delay. Within 7 Days thereafter, Defendants shall provide in writing to EPA and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

80.     If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

81.     If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify Defendants in writing of its decision.

82.     If Defendants elect to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 78 and 79, above. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XII.  DISPUTE RESOLUTION

83.     Unless otherwise expressly provided for in this Consent Decree, the Dispute Resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States or the State to enforce any obligation of Defendants arising under this Decree.

84. _Informal Dispute Resolution_. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants send the United States and the State a written Notice of Dispute. The Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States, after consultation with the State, shall be considered binding unless, within 10 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

85. _Formal Dispute Resolution_. Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and the State a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

86. The United States shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States, and shall be developed in consultation with the State. The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with Paragraph 88.

87. An administrative record of the dispute shall be maintained by EPA and shall contain all Statements of Position, including supporting documentation, submitted pursuant to this Section.

88. Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States and the State, in accordance with Section XVI of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to Paragraph 86. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of this Consent Decree.

89. The United States and/or the State shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

90. Standard of Review

   a. Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 85 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

   b. Other Disputes. Except as otherwise provided in this Consent Decree, in any

other dispute brought under Paragraph 85, Defendants shall bear the burden of demonstrating that its position fulfills the terms, conditions, requirements, and objectives of this Consent Decree.

91.     The invocation of Dispute Resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 67. If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Stipulated Penalties).

## XIII.  INFORMATION COLLECTION AND RETENTION

92.     The United States, the State, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry onto any property under the ownership or control of the Defendants, at all reasonable times, upon presentation of credentials, to:

    a.     monitor the progress of activities required under this Consent Decree;

    b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

    c.     obtain samples and, upon request, splits of any samples taken by Defendants or its representatives, contractors, or consultants;

    d.     obtain documentary evidence, including photographs and similar data; and

    e.     assess Defendants' compliance with this Consent Decree.

93.     Upon request, Defendants shall provide EPA and the State or their authorized representatives splits of any samples taken by Defendants. Upon request, EPA and the State shall provide Defendants splits of any samples taken by EPA or the State.

94.     Until five years after the termination of this Consent Decree, Defendants shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the State, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

95.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States and the State at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, Defendants shall deliver any such documents, records, or other information to EPA or the State. Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendants assert such a privilege, they shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendants. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

41

96. Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

97. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIV. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

98. This Consent Decree resolves the civil claims of the United States and the State alleged in the Complaint filed in this action as follows:

    a. With respect to Magnum and the Magnum Subsidiaries, this Consent Decree resolves the civil claims of the United States and the State for civil penalties and injunctive relief for the violations alleged in Appendices A and B of the Complaint.

    b. With respect to Patriot and the non-Magnum Subsidiaries, this Consent Decree resolves the civil claims of the United States and the State for injunctive relief for the violations alleged in the Complaint.

99. The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 98. This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 98.

100.     Water-quality based effluent limits for selenium are the subject of pre-existing enforcement actions, including the settlement with Hobet identified in Paragraph E above, are addressed in the appeal to the Circuit Court of Kanawha County, West Virginia, Civil Action No. 08-AA-76 of the June 12, 2008 decision of the Environmental Quality Board, and are considered in individual permitting actions taken by the State in issuing and revising NPDES permits. EPA recognizes the ongoing efforts by the State in developing policies to limit and treat selenium. In the interest of creating a consistent approach to addressing selenium, this Consent Decree is not intended to impose injunctive relief or other legal sanctions with respect to that pollutant. Notwithstanding, the United States and the State reserve all rights and claims with respect to selenium in accordance with Paragraph 101 below.

101.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, or other appropriate relief relating to the Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 98 of this Section.

102.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner

that Defendants' compliance with any aspect of this Consent Decree shall result in compliance with provisions of the Act, 33 U.S.C. § 1311, *et seq.*, or with any other provisions of federal, state, or local laws, regulations, or permits. Application for construction grants, State Revolving Loan Funds, or any other grants or loans, or other delays caused by inadequate Facility planning or plans and specifications on the part of Defendants shall not be cause for extension of any required compliance date in this Consent Decree.

103. This Consent Decree does not limit or affect the rights of Defendants or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

104. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

105. By the execution of this Consent Decree, Defendants release and shall hold harmless the United States and the State, their instrumentalities, agents, and employees, in their official and personal capacities, of any and all liability or claims arising out of or otherwise related to the negotiations leading to this Consent Decree and all matters contained therein.

## XV. COSTS

106. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XVI. NOTICES

107. Unless otherwise specified herein, whenever notifications, submissions, reports, or

communications are required by this Consent Decree, they shall be made in writing and addressed as

follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-1-1-09476

To EPA:

Director, Office of Civil Enforcement
U.S. Environmental Protection Agency
Ariel Rios Building, 2241A
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

NPDES Enforcement Branch Chief
U.S. EPA Region III
1650 Arch Street, 3WP42
Philadelphia, PA 19103

To the State

Chief Inspector, Environmental Enforcement
West Virginia Department of Environmental Protection
601 57th Street, SE
Charleston, WV 25304

Director, Division of Mining and Reclamation
West Virginia Department of Environmental Protection
601 57th Street, SE
Charleston, WV 25304

Chief, Office of Legal Services
West Virginia Department of Environmental Protection
601 57th Street, SE
Charleston, WV 25304

To Defendants:

Joseph W. Bean
Senior Vice President, General Counsel & Secretary
Patriot Coal Corporation
12312 Olive Boulevard
St. Louis, Missouri 63141

Paul H. Vining
President and Chief Operating Officer
Patriot Coal Corporation
500 Lee Street, E., Suite 900
Charleston, WV 25301

108.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

109.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVII.  EFFECTIVE DATE

110.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter this Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVIII.  RETENTION OF JURISDICTION

111.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XII (Dispute Resolution) or XIX (Modification) or effectuating or enforcing compliance with the terms of this Decree.

## XIX.  MODIFICATION

112.    The terms of this Consent Decree, including any attached appendices, may be

modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

113.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section XII of this Decree (Dispute Resolution); provided, however, that, instead of the burden of proof provided by Paragraph 90, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XX.  TERMINATION

114.    After Defendants have completed the requirements of Section VI (Compliance Requirements) and Paragraphs 25-33 (Environmental Management System and EMS Audit) of this Decree, have thereafter maintained continuous satisfactory compliance with this Consent Decree for a period of three years, have complied with all other requirements of this Consent Decree, including those relating to the Injunctive Relief under Section VII and Additional Injunctive Relief required by Section VIII of this Consent Decree, and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States and the State a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

115.    Following receipt by the United States and the State of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree. If the United States, after consultation with the State, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

116. If the United States, after consultation with the State, does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section XII of this Decree. However, Defendants shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 85 of Section XII, until 60 Days after service of its Request for Termination.

## XXI. **PUBLIC PARTICIPATION**

117. This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding this Consent Decree disclose facts or considerations indicating that this Consent Decree is inappropriate, improper, or inadequate. Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XXII. **SIGNATORIES/SERVICE**

118. Each undersigned representative of the Defendants, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, and the undersigned representative of the State certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

119. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of

this Court including, but not limited to, service of a summons.

## XXIII.  **INTEGRATION**

120.　This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.　Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIV.  **FINAL JUDGMENT**

121.　Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and Defendants.　The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXV.  **APPENDICES**

122.　The following appendices are attached to and part of this Consent Decree:

Appendix A: Compliance Focused Environmental Management System Elements

Appendix B: "Stream Restoration Plan for a 25-Mile Section of the Little Coal River," dated August 31, 2006.

SO ORDERED THIS __30th__DAY OF __April__ , 2009.

_____

John T. Copenhaver, Jr.
United States District Judge
49

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Patriot Coal Corp., et al.,*

FOR THE UNITED STATES OF AMERICA

Date: 2/3/09

JOHN CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

Date: 2/4/09

LAURA A. THOMS
BRITTA G. HINRICHSEN
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Patriot Coal Corp., et al.,*

FOR THE UNITED STATES OF AMERICA

CHARLES T. MILLER
United States Attorney

Date: 2/4/09

CAROL A. CASTO
Assistant United States Attorney
WV State Bar Number 890
P.O. Box 1713
Charleston, WV 25326

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Patriot Coal Corp., et al.*

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

Date: 1/23/09

CATHERINE McCABE
Acting Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building, 2201A
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Patriot Coal Corp., et al.*

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

Date: 1/5/09

DONALD S. WELSH
Regional Administrator
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029
215-814-2900
215-814-2901 (fax)

Date: 12/30/08

WILLIAM C. EARLY
Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029
215-814-2606
215-814-2603 (fax)

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Patriot Coal Corp., et al.,*.

FOR THE WEST VIRGINIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION

Date: 12-23-08

HEATHER CONNOLLY
Chief, Office of Legal Services
West Virginia Department of Environmental Protection
601 57th Street, SE
Charleston, WV 25304

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Patriot Coal Corp., et al.,*

FOR DEFENDANTS PATRIOT COAL CORP.; MAGNUM COAL CO.; APOGEE COAL CO., LLC; CATENARY COAL CO., LLC; COYOTE COAL CO. LLC; DAKOTA LLC; HOBET MINING, LLC; JUPITER HOLDINGS LLC; LITTLE CREEK LLC; MIDLAND TRAIL ENERGY LLC; PANTHER LLC; REMINGTON LLC; WILDCAT LLC; BLACK STALLION COAL CO., LLC; BLACK WALNUT COAL CO.; COLONY BAY COAL CO.; EASTERN ASSOCIATED COAL, LLC; HILLSIDE MINING CO.; JARRELL'S BRANCH COAL CO.; KANAWHA EAGLE COAL, LLC; LOGAN FORK COAL CO.; MARTINKA COAL CO., LLC; MOUNTAIN VIEW COAL CO., LLC; PINE RIDGE COAL CO., LLC; RIVERS EDGE MINING, INC.; AND WINIFREDE DOCK LLC.

Date: January 12, 2009

PAUL H. VINING
President and Chief Operating Office
Patriot Coal Corporation
500 Lee Street, E., Suite 900
Charleston, WV 25301